UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGEL ZURITA,

                Plaintiff,

        -v-

3275 CHICKEN CORP., *et al.*,

              Defendants.

24-CV-9364 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Angel Zurita brought this action against 3275 Chicken Corp., 3275 Kennedy Chicken Corp., and Michael Ekeijeh (collectively, "Defendants"), asserting claims for unpaid minimum and overtime wages and spread-of-hours pay under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Zurita has served all Defendants (ECF Nos. 7-9), who have not answered the complaint or otherwise appeared in this action, and certificates of default have been filed as to each Defendant (ECF Nos. 18-20). Zurita now moves for default judgment under Federal Rule of Civil Procedure 55(b). (ECF No. 26.) For the reasons that follow, the motion is granted.

## I.  Background

The following facts are taken from the Complaint and Zurita's declaration (the "Zurita Declaration"). 3275 Chicken Corp. and 3275 Kennedy Chicken Corp, (collectively, "Kennedy Chicken and Burgers") employed Zurita as a cook and food prepper at their fast-food restaurant located in the Bronx from on or about March 14, 2024 until on or about July 20, 2024. (ECF No. 1 ("Compl.") ¶¶ 37-38; ECF No. 28-7 ("Zurita Decl.") ¶¶ 5-6.) Ekeijeh is an owner, officer, director, shareholder, and/or managing agent of Kennedy Chicken and Burgers who made hiring decisions, determined employee salaries, and supervised the wage and hour practices and

policies of the business. (Compl. ¶ 21.) Ekeijeh was involved in hiring Zurita and in deciding the amount and manner in which he was compensated. (*Id.* ¶¶ 28-29.)

During his employment, Zurita worked six days a week from about 10:00 a.m. until about 8:00 p.m. (*Id.* ¶ 39.) He was not provided with uninterrupted meal breaks. (Zurita Decl. ¶ 11.) Throughout Zurita's employment, Defendants paid him a set rate of $80.00 a day. (Compl. ¶¶ 41-42.) Defendants did not pay Zurita spread-of-hours compensation on days when his work exceeded ten hours and did not pay him overtime compensation for weeks in which he worked in excess of forty hours. (*Id.* ¶¶ 46-47.) Defendants also did not provide Zurita with a complete and accurate wage notice when he was hired or at any time thereafter and did not provide him with complete and accurate paystubs along with his weekly earnings. (*Id.* ¶ 50.) Zurita was never required to sign in or out of his shifts, such that he believes Defendants do not have time records establishing the number of hours he worked each day and week. (Zurita Decl. ¶¶ 8-9.)

Zurita commenced this lawsuit on December 9, 2024. (*See* Compl.) Summonses for Defendants were returned executed on January 15, 2025. (*See* ECF Nos. 7-9.) The affidavits of service indicate that on December 17, 2024, a process server served a person authorized by the New York Secretary of State to accept service of process on the corporate defendants (ECF Nos. 7-8) and that on December 20, 2024, a process server served Ekeijeh by delivering a true copy of the summons and complaint to a person of suitable age and discretion at Ekeijeh's place of business (ECF No. 9). On March 11, 2025, after Defendants failed to appear or respond to the Complaint, the Court ordered Zurita to notify it of whether he intended to move for default judgment. (ECF No. 10.) Zurita then obtained certificates of default as to each Defendant and served copies of the certificates on each Defendant by mail. (ECF Nos. 18-21.)

2

Zurita subsequently filed the present motion for default judgment as to all Defendants (ECF No. 26), along with an accompanying memorandum of law (ECF No. 27 ("Mem.")) and a series of supporting documents (*see* ECF Nos. 28-1 to 28-9), including a declaration by Zurita (the "Zurita Declaration") (ECF No. 28-7 ("Zurita Decl.")).  On May 20, Ekeijeh filed a letter pro se, alleging that he does not have any record of Zurita working for 3275 Chicken Corp. and that he does not know Zurita.  (ECF No. 31.)  He did not otherwise respond to the complaint or motion for default judgment, and his letter did not seek any relief from the Court.  The Court then held a telephonic conference on July 18, 2025, with Zurita's counsel and Ekeijeh present. The Court ordered that any appearance by counsel for the corporate Defendants and any response to the motion for default judgment must be filed by August 19, 2025.  Since then, no counsel for Defendants have appeared and no Defendant has filed a response to the motion for default judgment.

## II.    Legal Standard

"Under Federal Rule of Civil Procedure 55, there are two steps involved in entering judgment against a party who has failed to defend: entry of default, and the entry of default judgment."  *Collado v. Adolfo Meat Mkt. Corp.*, No. 22-CV-9366, 2025 WL 588063, at *1 (S.D.N.Y. Feb. 24, 2025) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  At the first step, a party "against whom a judgment for affirmative relief is sought" is found to be in default when it "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  When a defendant is in default, a complaint's well-pleaded factual allegations as to its liability are deemed admitted.  *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended* (Nov. 26, 2013).  "The second step, entry of a default judgment, 'converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted' by the pleadings."  *Cortez v. Brand*

3

*Name 99 Cents & Up Corp.*, No. 24-CV-5262, 2025 WL 1251297, at \*2 (S.D.N.Y. Apr. 30, 2025) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).  "[I]t is the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted." *Rodriguez v. Franco Realty Assocs., LLC*, No. 22-CV-6380, 2023 WL 8762994, at \*2 (S.D.N.Y. Dec. 19, 2023).  "To determine whether the plaintiff's allegations are well pleaded for purposes of a default judgment, the Court applies the same standards that govern a motion to dismiss under Rule 12(b)(6)." *Cala v. Buena Vista Tortillas Corp.*, No. 21-CV-6890, 2023 WL 2574746, at \*2 (S.D.N.Y. Mar. 20, 2023) (cleaned up).

Because "[a] default judgment entered on well-pleaded allegations does not reach the issue of damages," *Cortez*, 2025 WL 1251297, at \*3, "to secure a default judgment for damages, the plaintiff must produce evidence sufficient to establish damages with 'reasonable certainty,'" *Rodriguez*, 2023 WL 8762994, at \*2 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Education and Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 232 (2d Cir. 2012)).  "District courts have 'much discretion' in determining whether to hold an inquest on damages; an inquest is not mandatory, and a plaintiff's damages may be established by 'detailed affidavits and documentary evidence.'" *Zokirzoda v. Acri Café Inc.*, No. 18-CV-11630, 2020 WL 359908, at \*1 (S.D.N.Y. Jan. 22, 2020) (quoting *Cement & Concrete Workers*, 699 F.3d at 234).

III.   **Discussion**

Zurita asserts four claims against Defendants under the FLSA and NYLL: (1) failure to compensate for overtime hours, in violation of both the FLSA and NYLL; (2) failure to pay New York's minimum wage, in violation of the NYLL; (3) failure to pay spread-of-hours compensation, in violation of the NYLL; and (4) failure to provide wage notices and statements,

in violation of the NYLL.  (*See generally* Compl.)  The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(a).

### A.    Liability

To state a FLSA claim for minimum wage or overtime, "a plaintiff must allege that he was the defendant's employee, that his work involved interstate activity, and that he worked hours for which he did not receive minimum and/or overtime wages." *Rodriguez*, 2023 WL 8762994, at *2.  "The analysis is the same for NYLL wage-and-hour claims, except that plaintiffs need not show a nexus with interstate commerce or a minimum amount of annual sales." *Id.*

Zurita qualifies as an employee under both the FLSA and the NYLL.  "To determine whether a defendant employed an FLSA plaintiff, courts look to the 'economic reality' of a working relationship." *Zokirzoda*, 2020 WL 359908, at *2 (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013)).  In applying this standard, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (citation omitted).  "To establish employment for NYLL purposes, courts look to the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Zokirzoda*, 2020 WL 359908, at *3 (quotation marks omitted).

Here, Zurita worked as a cook and food prepper in Defendants' restaurant. (Compl. ¶ 37.) Defendants set his work schedule and rate of pay and retained the power to hire and fire him. (*Id.* ¶¶ 15, 22-30.)  There is no indication in the record that Zurita worked independently, received fringe benefits, had any investment in the business, or assumed the business's losses

and liabilities.  *See Zokirzoda*, 2020 WL 359908, at *2-3; *Hosseini v. Miilkiina LLC*, No. 22-CV-1459, 2023 WL 7128092, at *3 (S.D.N.Y. Oct. 27, 2023).  Accordingly, Zurita was Defendants' employee under both the FLSA and the NYLL.

Zurita has also sufficiently established that he was "employed in an enterprise engaged in commerce or in the production of goods for commerce," and that the enterprise has at least $500,000 in gross volumes of sales made or business done, as required to prevail under the FLSA.  29 U.S.C. §§ 203(s)(1)(A), 207(a)(1).  The Complaint alleges that "[a]t all times relevant to this Complaint, Kennedy Chicken and Burgers had and continues to have employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including Plaintiff."  (Compl. ¶ 13.)  Zurita is therefore an employee covered by the FLSA.  *See Rodriguez*, 2023 WL 8762994, at *2.

Finally, Zurita has sufficiently alleged that he did not receive minimum or overtime wages.  "To state an FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about [his] salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period."  *Zokirzoda*, 2020 WL 359908, at *2.  "Similarly, to state an FLSA overtime claim, a plaintiff must allege only that [he] worked longer than forty hours of compensable time in a workweek, and that [he] was not properly compensated for that overtime."  *Id.*  Here, Zurita has alleged that from on or about March 15, 2024 to on or about July 24, 2024, he worked from about 10:00 a.m. until about 8:00 p.m. six days a week, working approximately sixty hours each week.  (Compl. ¶¶ 38-40.)  Zurita also alleges that he was paid only a daily set rate of $80.00, which comes out to an average wage of $12 per hour.[1]  (*Id.* ¶ 42.)

---

[1] The Court adopts the calculation set forth in New York's Hospitality Industry Wage Order, which calls for dividing the employee's total weekly earnings by forty hours where that is less than the actual number of hours worked.  12 N.Y.C.R.R. § 146-3.5(b).

Because Zurita alleges that he worked over forty hours a week without receiving overtime and was paid less than New York's minimum wage at that time (*id.* ¶ 43), he sufficiently states a claim for failure to pay minimum and overtime wages in violation of FLSA and the NYLL. *See Rodriguez*, 2023 WL 8762994, at *3.

Zurita also sufficiently alleges a spread-of-hours claim under the NYLL, which requires restaurant employees to receive one additional hour of pay at the basic minimum hourly rate on each day that the employee works a spread of hours exceeding ten hours.  12 N.Y.C.R.R. § 146-1.6(a).  Zurita alleges that he sometimes worked in excess of ten hours and was not pay spread-of-hour compensation for those shifts.  (Zurita Decl. ¶ 10; Compl. ¶ 46.)

Lastly, Zurita sufficiently alleges that Defendants failed to provide him with a wage notice or a proper wage statement, as required by NYLL §§ 195(1)(a) and (3).  The Second Circuit has held that a plaintiff has Article III standing to bring a NYLL wage notice and wage statement claim in federal court only if he "show[s] some causal connection between the lack of accurate notices and the downstream harm."  *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024).  The standard is satisfied where the plaintiff demonstrates that he "plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided," such as when he alleges a plausible theory as to how "inaccurate or noncompliant notices prevented [him] from obtaining full payment of wages in a timely fashion."  *Id.* at 308-09.  Here, Zurita alleges that he never received a wage notice or a proper wage statement, and that he was consequently "kept in the dark about how much he should have been paid."  (Compl. ¶¶ 50-52.)  He further alleges that "[h]ad Defendants provided such wage notices and statements, [he] would have known that he was entitled to overtime compensation . . . and could have advocated for himself and brought this lawsuit earlier to enforce his rights

under state and federal law." (*Id.* ¶ 53.)  These allegations sufficiently establish that Defendants violated the NYLL and that such violation allowed Defendants "to hide [their] violations of wage and hour laws and thus prevent [Zurita] from determining and seeking payment for the precise amount of [his] unpaid wages."  *Cortez*, 2025 WL 1251297, at *6 (cleaned up) (collecting cases for the proposition that such allegations establish Article III standing post-*Guthrie*).

### B.    Damages

Having concluded that Zurita has established liability on his claims against Defendants, the Court now turns to the question of damages.  Although a court may "conduct hearings or make referrals" to "determine the amount of damages" for a default judgment, Fed. R. Civ. P. 55(b)(2), such a hearing "is not required where a sufficient basis on which to make a calculation exists."  *Cortez*, 2025 WL 1251297, at *6 (quotation marks omitted).  Based on the record here, which includes the Complaint, Zurita's Declaration, and Zurita's estimated calculation of damages (*see* Compl.; Zurita Decl.; ECF No. 28-8), the Court concludes that a further inquest is unnecessary.

Zurita avers that, because he was never asked to clock in or out of his shifts, Defendants do not have accurate records of his hours.  (Zurita Decl. ¶¶ 8-9.)  "When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only . . . submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'"  *Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).  This burden is not high, and the employee need only provide "estimates based on his own recollection."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).  Unpaid compensation claims under the NYLL are subject to a similar standard that places even higher burdens on employers, such that "[a]n

8

employer who cannot meet the requirements of the FLSA cannot satisfy this more demanding burden of the NYLL." *Cortez*, 2025 WL 1251297, at *7 (cleaned up).

The Court accepts Zurita's allegations that he was paid only $80.00 a day from March 15, 2024 to July 20, 2024, and that he worked around ten hours per day for six days a week. (Compl. ¶¶ 38-42). "Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate for hours worked in excess of 40 hours per workweek." *Rodriguez v. MRC Bakery Corp.*, No. 24-CV-04570, 2025 WL 2748248, at *20 (E.D.N.Y. Sept. 29, 2025) (quotation marks omitted). "To calculate Plaintiff's overtime compensation, the number of hours Plaintiff worked over forty per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage." *Id.* Because Zurita establishes that he worked twenty hours of overtime for the eighteen weeks of his employment (*see* ECF No. 28-8 at 2), and because the applicable minimum wage in New York was $16 an hour during the course of Zurita's employment, *see MRC Bakery Corp.*, 2025 WL 2748248, at *19, the Court concludes that Zurita is owed the sum of 360 hours multiplied by 150 percent of $16, or $8,640.00.

Likewise, the FLSA and the NYLL both require employers to pay their employees at least the respective federal or state minimum wage for every hour worked. 29 U.S.C. § 206(a); NYLL § 652(1). Zurita seeks to recover on his minimum wage claim under only the NYLL. (*See* Mem. at 22-23.) Because New York's applicable minimum wage was $16 an hour during Zurita's employment, and because Zurita has established with reasonable certainty that he was paid only $12 an hour, the Court concludes that he is entitled to recover the difference of $4 for all hours he worked over the course of his eighteen-week employment, amounting to $4,320.

9

However, although Zurita's allegations sufficiently established Defendants' liability for spread-of-hours violations, the Court concludes that he has not proven damages for these violations with reasonable certainty.  The Complaint alleges that Zurita usually worked "from about 10:00 a.m. until about 8:00 p.m.," or ten hours a day (Compl. ¶ 39), and that he was not paid spread-of-hours compensation "when the shifts he worked exceeded ten (10) hours" (*id.* ¶ 46).  The Zurita Declaration alleges that he only "sometimes" worked later than 8:00 p.m. (Zurita Decl. ¶ 10.)  These allegations establish that Zurita sometimes worked shifts in excess of ten hours, but not always.  Yet in his estimation of damages, Zurita alleges that he worked shifts in excess of ten hours *every day* that he worked.  (ECF No. 28-8 at 2.)  But elsewhere in his estimation, Zurita alleges that he worked only 60 hours per week during his six-day work weeks, suggesting that he rarely worked shifts in excess of ten hours.  (*See id.*)  Under such circumstances, the Court concludes that the record does not establish with a reasonable certainty that Zurita worked in excess of ten hours every day, and that Zurita has failed to otherwise provide a reasonably certain estimate of the number of days he worked shifts in excess of ten hours.  Accordingly, the Court declines to award any damages for spread-of-hours violations.

Zurita has met his burden as to statutory damages for Defendants' wage notice and wage statement violations.  NYLL § 198(1-b) entitles employees to recover wage-notice statutory damages of $50 "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  NYLL § 198(1-b).  NYLL § 198(1-d) entitles employees to recover wage-statement statutory damages of $250 "for each work day that the violations occurred or continue to occur," also not to exceed $5,000.  NYLL § 198(1-d).  Zurita alleges that he never received a wage statement or wage notice.  (Compl. ¶¶ 50-51.)  "Since Defendant[s] failed to provide Plaintiff with the required wage notice for more than 100 days, and failed to provide Plaintiff

10

with the required wage statements for more than twenty days, he is entitled to the maximum statutory damage award . . . for a total of $10,000 in statutory damages." *Cortez*, 2025 WL 1251297, at *8 (cleaned up).

Zurita also seeks liquidated damages under the NYLL for his unpaid minimum wages, overtime, and spread-of-hours claims. (Mem. at 25-26.) The NYLL provides for liquidated damages equal to 100% of the total of wage underpayments "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 663(1). "[I]n light of Defendants' default, they have failed to make a showing of good faith." *MRC Bakery Corp.*, 2025 WL 2748248, at *22; *see also Cortez*, 2025 WL 1251297, at *8 ("[T]he burden in this context is on Defendant to show good faith and the absence of plausible allegations of bad faith."). Because Zurita has established reasonably certain underpayment damages of $12,960 ($8,640 in unpaid overtime and $4,320 in unpaid minimum wage), the Court awards him an additional equal amount in liquidated damages.

Zurita is also entitled to prejudgment and post-judgment interest. (Mem. at 26-28.) Employees are entitled to an award of prejudgment interest in addition to liquidated damages under the NYLL. NYLL § 198(1-a). However, "[p]rejudgment interest is available only for actual damages under the NYLL, not liquidated damages or statutory penalties." *Rodriguez*, 2023 WL 8762994, at *5. New York law sets a statutory rate of interest of nine percent per year. *See* N.Y. C.P.L.R. § 5004. "Where damages were incurred at various times, as is the case with unpaid wages over the course of several years, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Zokirzoda*, 2020 WL 359908, at *6 (cleaned up). "That intermediate date is frequently the midpoint of the plaintiff's employment." *Id.* Accordingly, the Court awards nine percent

11

prejudgment interest on $12,960 (the amount Zurita is owed excluding liquidated damages and the wage notice and wage statement penalties) starting from May 18, 2024, the approximate midpoint of Zurita's employment.

Zurita is also entitled to post-judgment interest, calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a); *see also Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("[W]e have consistently held that an award of postjudgment interest is mandatory.").

Lastly, "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4).

## IV.    Conclusion

For the foregoing reasons, Zurita's motion for default judgment is GRANTED.

Damages are awarded against Defendants as follows: (1) $12,960 in back pay and unpaid overtime wages under the NYLL, with 9% prejudgment interest accruing from May 18, 2024; (2) $12,960 in liquidated damages; (3) $5,000 for Defendants' violation of NYLL § 195(1) and $5,000 for Defendants' violation of NYLL § 195(3); and (4) post-judgment interest pursuant to 28 U.S.C. § 1961. If any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Zurita may, within 30 days of the date of this order, file a post-judgment motion for attorney's fees and costs, with supplemental briefing and the necessary time records indicating, for each attorney, the date, the hours expended, and the nature of the work done, in order for the Court to calculate the reasonable attorney's fees owed to Zurita. Zurita is also directed to mail a copy of this Opinion and Order to the defaulting Defendants.

The Clerk is directed to enter judgment in favor of Zurita and against Defendants, jointly and severally, in the amount of $35,920.00 plus the prejudgment interest described above, to close the motion at Docket Number 26, and to close the case.

SO ORDERED.

Dated: March 6, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge